[No. 10888. Department Two. April 28, 1913.]

IDAHO & WESTERN RAILWAY COMPANY, *Respondent*, v. C. P. COEY *et al.*, *Appellants*.[1]

EMINENT DOMAIN — DAMAGES — ITEMS OF DAMAGE TO LAND NOT TAKEN—DEPRECIATION IN MARKET VALUES—INSTRUCTIONS. In proceedings to condemn a railroad right of way through a farm, it is error to refuse to instruct the jury that, in determining the damages to land not taken, they may consider the depreciation in the market value of the remaining lands by reason of its increased exposure to fire, if any, and from the tendency to propagate gophers and squirrels along the right of way, if appreciable and imminent, and from the unsightliness, if any, caused by cuts and fills, and from the destruction of any natural water course, and the inconvenience of farming and cultivating the premises as divided.

SAME—DAMAGES TO LAND NOT TAKEN—ENTIRE TRACT AS WHOLE. In such a case, where the tract was farmed as one body of land, it is error to refuse to instruct that the jury should consider the entire tract as one farm and determine the damages on the basis of how the construction of the road would affect the whole body of land as one farm.

Appeal by defendants from a judgment of the superior court for Spokane county, Yakey, J., entered June 22, 1912, upon the verdict of a jury awarding damages in a proceeding to condemn land for railroad purposes. Reversed.

*Hurn & Upton,* for appellants.

*F. M. Dudley* and *Cullen, Lee & Hindman,* for respondent.

MORRIS, J.—Action by respondent to appropriate lands of appellants for its right of way. Appeal is taken from the

[1]Reported in 131 Pac. 810.

judgment, alleging errors by the court in withholding from the jury certain elements claimed by appellants as proper to be considered in determining the depreciation in value of the land not taken. The errors are assigned in various ways. They can, however, be best treated by discussing appellants' requested instructions, which the court refused to give.

The first of these requested instructions is as follows:

"You are hereby instructed that danger from fire communicated from passing engines to buildings, improvements and crops situated upon the part of the premises not taken for railroad purposes, if such danger is appreciable and imminent, may be considered by you in estimating the damages to the residue of the land not taken, in so far as the market value of the land not taken is thereby depreciated, but the possible or probable dangers that may result from such a cause to the defendants in the future cannot be considered by you. It is the danger from fire and not losses that may probably be occasioned thereby, that should be considered in determining the compensation to the defendants for the land not taken."

By the second requested instruction, the court was requested to instruct the jury that danger which might result from the tendency to propagate gophers or squirrels along the right of way of the railroad, if they found that such danger was appreciable and imminent, should be taken into consideration by them in determining the damages to the land not taken, limiting the damage as in the first instruction to the depreciation of the market value of the land, and not permitting the jury to determine any possible or probable loss that might result from the destruction of crops. The third requested instruction told the jury that it was proper for them to take into consideration, in determining the damages to the remainder, the unsightliness, if any, to the premises caused by the cuts and fills made in the construction of the road, the destruction of any natural water supply, the inconvenience of transporting the crop from the part of the land separated from the buildings, the inconvenience of transferring machinery and farm implements and the like from

one part of the premises to another, the inconvenience in farming and cultivating the land occasioned by the construction of the railroad, in so far as these elements entered into any depreciation of the market value of the land not taken. In instruction No. 4, the court was requested to charge the jury that, in estimating the damages to the land not taken, they should consider the whole land as one body, and not divide it up into parts for the purpose of estimating such damages. Each of these requested instructions correctly stated the law and should have been given, and since no other instruction covered the points, refusal was error.

In cases of this kind, in determining the damages, if any, to the land not taken, the ultimate question to be determined is the effect upon the market value of the land by reason of the construction and operation of the railroad. Whatever is reasonably certain to follow as an incident to such construction and operation, which in an appreciable degree depreciates the value of the remaining land, is a proper element of damage to be considered by the jury in arriving at its verdict. Remote, imaginary, uncertain, and speculative elements of damage may not be shown, but anything which from the continuous presence and operation of the railroad across a farm or other lands is, in view of the experience of mankind, reasonably sure to follow, is to be considered by the jury in ascertaining the damage, if any, to the lands not taken. Thus the danger from fire, in so far only as it depreciates the market value of the remaining lands, is a proper element. Not that the jury could estimate any probable loss from fire nor award damages for any increased exposure to fire, but simply depreciation in the value of the property because of the danger from fire. In other words, how much less, if any, would an intending purchaser be willing to give for the lands because of the danger from fire, if any, appreciable and imminent, by reason of the continuing operation of the road. This court has determined this question in *Seattle*

*& Montana R. Co. v. Gilchrist*, 4 Wash. 509, 30 Pac. 738, where it is said:

"Danger from fire communicated from passing engines to buildings and improvements situated upon the part of the premises not taken for railroad purposes, if such danger is appreciable and imminent, may be considered in estimating the damages, in so far as the residue of the land is thereby depreciated in value. But the possible or probable damages that may result from such a cause to the landowner, in the future, cannot be considered by the jury. Such damages are purely speculative, and not capable of satisfactory proof. A railroad company is liable, in an action for damages, for property destroyed by fire resulting from its negligence, but not for damages occurring without negligence in the proper operation of its road. And it is, therefore, the danger from fire, and not losses that may probably be occasioned thereby, and for which no recovery can be had, that should be considered in determining the compensation to be paid to the owner of the land."

Other cases in point are: *Keil v. Grays Harbor & Puget Sound R. Co.*, 71 Wash. 163, 127 Pac. 1113; *Leroy & W. R. Co. v. Ross*, 40 Kan. 598, 20 Pac. 197, 2 L. R. A. 217; *Centralia & C. R. Co. v. Brake*, 125 Ill. 393, 17 N. E. 820; *Weyer v. Chicago W. & N. R. Co.*, 68 Wis. 180, 31 N. W. 710; *St. Louis & S. E. R. Co. v. Teters*, 68 Ill. 144; Lewis, Eminent Domain (2d ed.), §§ 496, 497.

These principles determine the correctness of requested instructions 1, 2 and 3. In ruling upon the admission of testimony the trial court, while seemingly recognizing these principles especially as to the danger from fire, for some reason refused to so instruct the jury. Appellants' farm, across which the right of way is to be constructed, consists of a full half section in one body. In estimating the damage to the land not taken it was proper to consider the entire tract of land as one farm, and to determine the damages upon the basis of how the construction of the railroad would affect the whole body of land as one farm. In other words, the jury should consider two farms, one without any railroad across

it as it now exists, and the other with a railroad across it as it will exist when respondent's line is built and in operation. This is the rule where, as here, the whole farm is in one continuous tract and is used and farmed as one body of land. This principle was announced by us in *Sultan Water & Power Co. v. Weyerhauser Timber Co.*, 31 Wash. 558, 72 Pac. 114, where it was said, in seeking to formulate a rule for determining what should be considered as an entire tract for the purpose of estimating damages to the part not taken:

"In general, it is so much as belongs to the same proprietor as that taken, and as continuous with it, and used together for a common purpose;"

citing 2 Lewis, Eminent Domain (2d ed.), § 475.

See, also, *Wilmes v. Minneapolis & N. W. R. Co.*, 29 Minn. 242, 13 N. W. 39; *Kansas City, E. & S. R. Co. v. Merrill*, 25 Kan. 421; *Ham v. Wisconsin I. & N. R. Co.*, 61 Iowa 716, 17 N. W. 157; *Fayetteville & L. R. Co. v. Hunt*, 51 Ark. 330, 11 S. W. 418; *Chicago, M. & St. P. R. Co. v. Baker*, 102 Mo. 553, 15 S. W. 64; *Chicago, K. & W. R. Co. v. Brunson*, 43 Kan. 371, 23 Pac. 495; *Northeastern Neb. R. Co. v. Frazier*, 25 Neb. 42, 40 N. W. 604.

Request No. 4 was also proper because of the evidence of some of the witnesses in estimating the damage to the different forty-acre tracts. While for convenience of witnesses or to enable the jury to obtain a better understanding of the situation, it might in some cases be proper to inquire as to the damage to each subdivision of the whole tract, yet in arriving at its verdict the jury must consider the land as one tract, and determine the damages upon the basis of one entire tract and not several tracts.

For these reasons, we conclude that the judgment should be reversed and a new trial ordered.

Crow, C. J., Main, Ellis, and Fullerton, JJ., concur.